**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MONIQUE A. MARSHALL,**

                      **Plaintiff,**                        **1:12-cv-14
                                                                          (GLS/CFH)**

                    v.

**NEW YORK STATE OFFICE OF
TEMPORARY AND DISABILITY
ASSISTANCE,**[1]

                      **Defendant.**
_____

**APPEARANCES:**                         **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Monique A. Marshall
Pro Se
425 Second Avenue
Albany, NY 12209

**FOR THE DEFENDANT:**
HON. ERIC T. SCHNEIDERMAN      CATHY Y. SHEEHAN
New York State Attorney General      Assistant Attorney General
Albany Office
The Capitol
Albany, NY 12224

**Gary L. Sharpe
Chief Judge**

# MEMORANDUM-DECISION AND ORDER

---

[1] Pursuant to Marshall's Amended Complaint, which names the New York State Office of Temporary and Disability Assistance as the only defendant, the individual defendants listed on the docket are terminated as parties. (*See* Am. Compl., Dkt. No. 19.)

## I. Introduction

Plaintiff *pro se* Monique A. Marshall commenced this action against defendant New York State Office of Temporary and Disability Assistance (OTDA), alleging violations of Title VII[2] on the bases of race and national origin. (*See* Am. Compl., Dkt. No. 19.) Pending is OTDA's motion to dismiss. (*See* Dkt. Nos. 10, 20, 23.) For the reasons that follow, the motion is denied.

## II. Background[3]

Marshall began her employment with OTDA in May 2006 as a Housing Specialist 1, a grade eighteen position, in the Bureau of Housing and Shelter Services. (*See* Am. Compl. ¶ 1.) In this role, Marshall was responsible for assisting with the management of eighty-five contracts, as well as completing various programmatic reports. (*See id.* ¶ 5.) However, after her supervisor, Caroline Wilcox, retired, Marshall was directed by Richard Umholtz "to assume all of Ms. Wilcox's duties in addition to [her] own workload." (*Id.* ¶¶ 3, 7.) Though this was supposed to last for only three months, Marshal ended up performing the additional work, without

---

[2] *See* 42 U.S.C. § 2000e *et seq.*

[3] The allegations are drawn from Marshall's Amended Complaint and presented in a light most favorable to her.

2

any kind of compensation, for fifteen months. (*See id.* ¶¶ 7-8.) In fact, Umholtz told Marshall that she "had no choice in [the] matter and . . . would not receive overtime." (*Id.* ¶ 7.)

Marshall, who was one of two African Americans in her unit, (*see id.* at 4), approached Umholtz in May 2008 to discuss what she felt was an "unfair" workload for her level of compensation, (*id.* ¶ 9). Umholtz was unmoved, despite the fact that two white, female employees were getting paid at the supervisory grade of twenty-three, and combined, had less contract work than she did. (*See id.* ¶¶ 9-10.) That December, Marshall approached Scott Edwards about the discrepancy in her workload. (*See id.* ¶ 11.) Edwards disagreed, and told Marshall that she was only doing grade eighteen work. (*See id.*) After Marshall left the meeting, Edwards told Umholtz that he was going to assign Marshall a supervisor, and that they were going to "ride her like a horse, until we [cannot] ride her no more." (*Id.*)

The additional workload took a toll on Marshall; she began to feel distressed, missed work due to illness and was taken to a hospital in an ambulance "due to the stress of her workload." (*Id.* ¶ 12.) Consequently, Marshall contacted the OTDA's Equal Opportunity Development Office

(EOD) on August 11, 2009 to discuss her situation and file a complaint. (*See id.* ¶ 13.) After consulting with EOD, Marshall filed three complaints—dated August 17, August 31, and September 9, 2009—for discrimination and retaliation. (*See id.*)

Edwards did not react kindly to Marshall's initial meeting with EOD. (*See id.* ¶ 14.) Not only did he slam his door and use profanity, but he also discussed the matter with Umholtz and Marshall's new supervisor, Andrea Collins, both of whom also expressed their displeasure with EOD's involvement. (*See id.* ¶¶ 14-15.) The hostility towards Marshall continued. (*See id.* ¶¶ 17-18.) On August 18, 2009, Marshall overheard Edwards telling Umholtz that they needed to get something in her personnel file, to which Umholtz responded that he would "come in earlier and watch [Marshall's] time." (*Id.* ¶ 17.) The next day, Umholtz yelled to Marshall, in front of her colleagues, about the meeting he had to attend with EOD because of her. (*See id.* ¶ 18.) Thereafter, Edwards made all of the provisional employees, who happened to be white, permanent without conducting interviews. (*See id.* ¶ 19.) Finally, on August 26, 2009, Edwards switched Marshall's duties with Collins, and advised her that she had to attend a training program entitled, "Managing Priorities," although

4

other members of the staff were given the option of attending.  (*Id.* ¶ 20.)

In addition to her complaints with the EOD, Marshall filed a complaint with the New York State Division of Human Rights (DHR).  (*See id.* ¶ 32.)  Following its investigation, DHR dismissed Marshall's complaint and issued a Notice of Rights.  (*See id.* ¶¶ 41-42.)  Believing that her rights were violated and that DHR erred, Marshall filed the instant action.  (*See id.* ¶¶ 41, 43, 45.)

### III.  Standard of Review

The standard of review under Fed. R. Civ. P. 12 is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV.  Discussion

OTDA argues that Marshall's discrimination and retaliation claims fail to state causes of action, as neither makes the requisite connection between the misconduct alleged and her race or national origin.  (*See* Dkt. No. 23, Attach. 1 at 4-13.)  Alternatively, OTDA contends that only Marshall's failure to promote claim was included in her EEOC complaint, and thus, all of her other claims should be dismissed for failure to exhaust

5

administrative remedies. (*See id.* at 13-14.) Marshall counters that her Amended Complaint is sufficient to withstand OTDA's motion. (*See generally* Dkt. No. 26.) The court agrees with Marshall.

At this juncture, Marshall's obligation is only to plead "factual content that allows the court to draw the reasonable inference that [OTDA] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Simply put, OTDA's arguments are unpersuasive. Marshall's allegations regarding the disparity in her workload and the conduct of her supervisors after she contacted EOD far exceed the "facial plausibility" threshold with respect to each of her causes of action.[4]  *Id.*  Though allegations alone will not suffice at a later stage in the proceedings, Marshall's Amended Complaint is sufficient to survive a motion under Fed. R. Civ. P. 12(b)(6).[5] As such, OTDA's motion to dismiss is denied.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

---

[4] *See, e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (discussing the elements of a Title VII discrimination claim); *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012) (same, but Title VII retaliation claim).

[5] Marshall should take note of the arguments OTDA raises in its motion papers, specifically regarding the nexus between her protected characteristics and the alleged misconduct. (*See e.g.*, Dkt. No. 23, Attach. 1.)

6

**ORDERED** that defendants Scott Edwards, Colleen Salvagni, Andrea Collins, Brett Hebner and Richard Umholtz are terminated as parties; and it is further

**ORDERED** that OTDA's motion to dismiss (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that OTDA file the appropriate responsive pleadings within the time allotted by the rules; and it is further

**ORDERED** that the parties notify Magistrate Judge Hummel in order to schedule further proceedings in accordance with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 28, 2012
Albany, New York

*/s/ Gary L. Sharpe*
Gary L. Sharpe
Chief Judge
U.S. District Court